WADE AND OTHERS vs. HANNAH POTTER'S EXECUTOR.

The widow of an intestate cannot come into court, for her distributive share, before the settlement of her husband's estate; nor upon an open, unliquidated claim against the representative of one administrator, while there is another living; nor can she do so even upon a joint judgment or decree previously obtained against both.

Our statute, *Rev. Laws* 305, gives joint obligations as against representatives, the same effect as several obligations, but it does not extend to judgments, decrees, nor simple contract debts.

The return made by the Orphans Court to the writ of certiorari in this cause, and the affidavits taken in pursuance of leave given for that purpose, present the following case :

John Potter, the husband of Hannah Potter, died intestate, more than twenty years ago.   On the 10th March, 1813, administration of his estate was granted to Jotham Potter, Benjamin Potter and John Potter.   On the 19th March, 1813, they filed an inventory of his personal estate, amounting to nine thousand six hundred and thirty-five dollars, seventy-eight cents.   Two of the administrators have since died, namely, Benjamin Potter and Jotham Potter.   John Potter, the other

administrator, survived them, and is still living. Benjamin Potter died first, but at what time, does not appear. Jotham Potter died intestate, a short time previous to the first of May, 1829. On that day, administration of his estate was granted to William Day. In June term, 1829, Day declared the estate of his intestate, Jotham Potter, insolvent, and the Orphans Court thereupon, made the usual order on creditors, to exhibit their claims to the administrator, under oath, &c. Among others, the said Hannah Potter, widow of John Potter, the first intestate, claimed to be a creditor of the said Jotham Potter, deceased, to the amount of two thousand and thirty-nine dollars, seventy-one cents. This claim consisted, principally, of her distributive share as widow, of the personal estate of her said deceased husband, John Potter, of whose estate the said Jotham Potter was one of the administrators; and upon which distributive share she claimed sixteen years, nine months and ten days, interest

To this claim of the widow, Hannah Potter, the plaintiffs in certiorari, also claiming to be creditors of the said Jotham Potter, deceased, filed exceptions. In the term of June, 1831, the matter of this claim came on to be heard upon the exceptions filed thereto, and after hearing the parties by their counsel, the Orphans Court directed the surrogate to state an account upon certain principles; which he did, as follows:

1st. He charged the three administrators of
John Potter, deceased, with the amount of
inventory of his estate,     $9,635 78
2d. Allowed disbursements,     1,104 86

Leaving balance in their hands of     $8,530 92
exclusive of interest to be charged on
one side, and commissions to be credited
on the other.
3d. The widow's third part of the said
sum of $8,530 92, equal to     $2,843 64

4th. Jotham Potter, being one of the three administrators of John Potter, deceased, his, (the said Jotham Potter's estate) was chargeable by the widow of John Potter, with one-third part of her share of his estate, viz; with one-third of 2,843

| | | |
|---|---:|---:|
| dollars, 64 cents, equal to, | $ 947 | 88 |
| 5th. Allowance to Jotham Potter, for his share of commissions, | 50 | 00 |
| Leaving a balance of | 897 | 88 |
| 6th. Interest on this balance, for fifteen years, | 942 | 75 |
| Making the total sum of | $1,840 | 63 |

to be due from the estate of the said Jotham Potter, deceased, to the claimant, Hannah Potter; and this sum, the Orphans Court decreed to be due to her, from the estate of the said Jotham Potter deceased; and that the costs of those proceedings should be paid by his administrator, " out of the funds of the estate in his hands." Since this certiorari was issued, Hannah Potter has also died, and the suit has been continued according to the practice of this court, against James Carpenter, her executor.

*Corey & J. J. Chetwood*, for the plaintiffs.

*W. Chetwood*, for defendant.

HORNBLOWER, C. J. It is impossible to recite the facts of this case, without perceiving the necessity that exists for a reform in the administration of that department of our civil jurisprudence, to which is committed, in the first instance, the settlement of estates, and the rights of widows and orphans. We have here on record the case of a man who has been dead for more than twenty years: who left a personal estate of nearly ten thousand dollars, which has never yet been finally settled, and of which the widow has not received her portion. This is one only, of a number of cases, that has come under my observation, of hardship and injustice towards those who, of all others, are least competent to see after and assert their rights. The censure is not chargeable to the respectable gentlemen who usually preside in the Orphans Courts; but the evil arises out of the structure of that court, and the whole of the present system of laws relating to testamentary matters, and the administration of estates. But these are matters for the consideration of the legislature; to them belongs the right and the power to reform and amend the law; to us it appertains only to correct, so far as we can, the errors incident to the present system.

Wade *v.* Potter.

The decree of the Orphans Court in this case is erroneous, and must be set aside. If the widow of John Potter was entitled, in respect of her distributive share of his estate, to come in as a creditor of Jotham Potter, the deceased administrator of her husband, she was entitled to a dividend upon the *whole* amount of her distributive share, and not on one-third of it only, as was done in this case. Until, therefore, a settlement of her husband's estate had been made in due course of law, it was impossible to know whether any thing, or if any thing, how much was due to her from the administrators of her husband. But even if, in the life time of Jotham Potter, she had cited him and John Potter to account, and upon a settlement of their accounts as such administrators, she had obtained a decree against them for her distributive share, she would not have been entitled to come in as a creditor upon the estate of Jotham Potter, because there was, and still is, a surviving administrator, against whom the decree and her remedy upon it, survived. Her claim against the administrators would have been a joint and not a several claim. If Jotham was now living, as well as John, she could not sue them severally for her distributive share. We have a statute, it is true, *Rev. Laws* 305, *sec.* 4, making the representatives of a joint obligor, answerable, in the same manner as they would have been, if the " obligors " had been bound severally as well as jointly. But we have no statute making the representatives of persons against whom there may be a judgment or decree for the payment of money, liable in the same manner as such representatives would be, if the judgment or decree had been against the testator or intestate alone. Nor have we any statute making the representatives of one of several administrators, liable in the same manner as they would be, if such administrators had been severally liable. In other words, our statute gives to joint obligations, as against representatives, the same effect as several obligations ; but the statute does not extend to judgments, decrees, nor simple contract debts. If she is driven to seek her remedy on the administration bond, and that bond is joint and not several, then, by force of the statute, she may proceed at law against the representatives of the obligors, who may be dead. But she cannot come into court upon an open, unliquidated claim against the repre

sentatives of one administrator, while there is another living. Nor could she do so, even upon a joint judgment or decree, previously obtained against both. If Jotham Potter had survived the other administrators, and then died, the widow would have been entitled to come in for a dividend, on such sum as, upon a settlement of her husband's estate, had been found due to her from the administrators. But even then, her husband's estate must have been first settled according to law, before her dividend could be declared; whereas, in this case, that estate has never yet been settled.

If, however, I am wrong in this view of the case, and the widow has a right to sue the representatives of Jotham, or to claim as a creditor for her distributive share of her husband's estate, notwithstanding there may be surviving administrators of her husband; yet, whether anything, and if anything, how much she is entitled to, cannot be ascertained, till her husband's estate is settled. She ought, therefore, before she exhibited her claim, or as soon as she had done so, to have cited the surviving administrator to account, or in some legal manner have brought him to a settlement. This was not done; but the court undertook, by the agency of their clerk, to settle the amount due to her from the administrators of her husband, without having John Potter, the surviving administrator, before the court, or requiring him in any manner to account. It does not appear but that he has fully administered the whole of the estate, or if he has not done so, he may have sufficient assets in his hands, and be willing and able to pay the widow her distributive share; and in either case, it would be very unjust to satisfy her, in whole or in part, out of funds that belong to the creditors of Jotham. They cannot cite the surviving administrator of her husband to account; nor compel him, or the securities in the administration bond, to refund to them; at least, not at law, whatever they might do in equity.

I am therefore of opinion, the decree of the Orphans Court ought to be reversed, and that the record, &c. be remitted to that court, to be there proceeded on according to law.

FORD, J. concurred.

Decree reversed.